

1  SUSAN SHER (SBN WA 14210)
   Law Offices of Susan Sher
2  116 S. State Street
   Ukiah, California 95482
3  Telephone: (707) 463-1196
   Facsimile: (707) 462-6258
4  ssher@pacific.net

5  Attorney for Plaintiff,
   NICOLE SUMMER SMITH
6

7



8

9           **UNITED STATES DISTRICT COURT**

10     **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11

12  NICOLE SUMMER SMITH,              )  C**CV   13   1341**
                                       )
13              Plaintiff,             )
                                       )  **COMPLAINT FOR DAMAGES**
14              -v-                     )
                                       )  **1. RETALIATION IN VIOLATION**
15                                      )     **OF TITLE VII; and**
    THE STATE OF CALIFORNIA           )  **2. RETALIATION IN VIOLATION**
16  DEPARTMENT OF HIGHWAY             )     **OF THE CALIFORNIA FAIR**
    PATROL,                            )     **EMPLOYMENT AND HOUSING**
17                                      )     **ACT**
                Defendant              )
18                                      )  **DEMAND FOR A JURY TRIAL**
                                       )
19  _____)

20      Plaintiff, NICOLE SUMMER SMITH files suit against defendant CALIFORNIA

21  HIGHWAY PATROL ("CHP") and in support thereof alleges the following:

22                          **I. INTRODUCTION**

23      1. Plaintiff NICOLE SUMMER SMITH was an applicant for employment as a cadet

24  with defendant CHP. While undergoing a CHP background screening test, Ms. Smith was

25  sexually harassed by the CHP officer administering the test.

26      2. This incident of sexual harassment was brought to the attention of higher ranked

27  CHP officials. These officials failed to engage in a prompt and impartial investigation of the

28  discriminatory action as required by the CHP's own policies and procedures. Rather,

1  defendant CHP attempted to deter Ms. Smith from opposing this discriminatory employment
2  practice; it further discouraged her from participating in the CHP's Equal Employment
3  Opportunity ("EEO") proceedings. After Ms. Smith eventually pursued a formal EEO
4  complaint, defendant CHP failed to seriously address her concerns and instead, acted to
5  protect the officer about whom she complained.

6      3. After experiencing several acts of adverse treatment by the CHP related to her
7  complaint of discrimination, Ms. Smith was effectively dissuaded from continuing to pursue
8  her application for employment.

9      4. In this complaint herein, Ms. Smith alleges retaliation for having opposed an
10 unlawful employment practice and for having participated in an employment discrimination
11 proceeding in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §
12 2000(e)(3)(a) ("Title VII"); and the California Fair Employment and Housing Act, Govt C §
13 12940(h) (the "FEHA"). Defendant CHP is liable to Ms. Smith for economic and
14 compensatory damages as well as for costs, attorney's fees and interest.

15              **II. JURISDICTION AND VENUE**

16     5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and
17 1343(a) (4) for violations of Title VII.

18     6. Jurisdiction for declaratory and other relief is invoked pursuant to 28 U.S.C. §§
19 2201(a) and 2202.

20     7. This Court has supplemental jurisdiction over the related state claim pursuant to 28
21 U.S.C. § 1367. Plaintiff's claim under the California Fair Employment and Housing Act,
22 Cal. Gov't Code § 12940(h) is related, as all of plaintiff's claims share common operative
23 facts. Resolving all state and federal claims in a single action serves the interests of judicial
24 economy, convenience and fairness to the parties.

25     8. Costs and attorneys fees may be awarded pursuant to 42 U.S.C. § 2000e-5(k) and
26 California Government Code § 12965(b).

27     9. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §
28 2000e-5(f)(3) because but for the unlawful employment practices alleged herein, plaintiff

1  would have worked in Mendocino County, California which is situated in this District.

2  ### III. PARTIES

3  10. Plaintiff NICOLE SUMMER SMITH, an applicant for employment with
4  defendant CHP was at all times relevant to the allegations of this complaint, an individual
5  residing in Mendocino County, State of California in this judicial district.

6  11. Defendant CHP, headquartered in Sacramento, California is an agency existing by
7  the virtue of, and is a division of the State of California.

8  12. Plaintiff is informed and believes, and based thereon alleges that defendant is an
9  employer covered by Title VII and the California FEHA in that it is engaged in an industry
10 affecting interstate commerce and employs at least 15 full or part-time employees for each
11 working day of each of 20 or more calendar weeks in the current or preceding year.

12 ### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

13 13. Plaintiff has exhausted all required administrative remedies.

14 14. Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment
15 Opportunity Commission ("EEOC") on or about June 12, 2012.  A true and correct copy of
16 the EEOC charge is attached hereto as Exhibit "A".

17 15. On January 8, 2013, plaintiff received a Notice of Right to Sue issued by the U.S.
18 Department of Justice, giving her the right to file a lawsuit within 90 days of her receipt of
19 said Notice.  A true and correct copy of the U.S. Department of Justice Notice of Right to
20 Sue is attached hereto as Exhibit "B".

21 16. On or about April 23, 2012, plaintiff filed a complaint of discrimination with the
22 California Department of Fair Employment and Housing ("DFEH").  A true and correct copy
23 of the DFEH charge is attached hereto as Exhibit "C".

24 17. On or about May 19, 2012, plaintiff received a Notice of Case Closure from the
25 DFEH dated May 17, 2012, giving her the right to file a lawsuit within one year of the date of
26 said Notice.  A true and correct copy of the DFEH Notice of Case Closure is attached hereto
27 as Exhibit  "D".

28 //

## V. **FACTUAL ALLEGATIONS**

18. Several members of Ms. Smith's family are presently or have been employed as law enforcement officers, including plaintiff's husband who is a CHP officer. Having been particularly inspired by her husband's successful employment and impressed by what she had at one time perceived to be the dignity and respect that the CHP showed to its officers, applicants for employment and the public, for many years, Ms. Smith aspired to become a CHP officer.

19. On April 10, 2009, Ms. Smith submitted an application for employment as a California Highway Patrol Cadet. On May 23, 2009, she successfully completed the CHP written exam in Eureka, California. On June 6, 2009, she successfully completed the CHP physical agility test in Eureka, California.

20. On or about June 8, 2009, Ms. Smith participated in a CHP Qualification Appraisal Interview in Anderson, California and scored a 90-point rating.

21. In early July 2009, Ms. Smith submitted her Personal History Statement to the CHP Northern Division headquarters in Redding, California.

22. On June 3, 2010, Ms. Smith met with CHP Background Investigator Officer Stephanie Barnwell at the home of plaintiff's mother in Fort Bragg, California where her Personal History Statement was reviewed. Following this meeting, plaintiff felt confident that she was well on her way to being accepted into the CHP Academy.

23. On the morning of December 16, 2010, Ms. Smith underwent a Critical Voice Stress Analysis ("CVSA") test at the CHP Northern Division headquarters in Redding as part of a background screening process for selection to become a CHP Cadet. The CVSA was administered by CHP Officer Brian Call. Feigning that they were required by the CVSA, Officer Call asked Ms. Smith several intrusive, highly personal and offensive questions regarding her sex life, to wit: how old she was when she lost her virginity; how many sexual partners had she had; would she ever consider cheating on her husband; and did she find him (Call) attractive. The entire CVSA was audio tape-recorded.

24. Plaintiff is informed and believes, and based thereon alleges that Officer Call had

SMITH v. CHP, COMPLAINT FOR TITLE VII AND FEHA VIOLATIONS                    -4-

1  engaged in similar questioning of other female applicants for cadet positions with the CHP.

2  Plaintiff is informed and believes, and based thereon further alleges that the CHP was aware

3  of this prior behavior at the time that Officer Call administered her CVSA.

4  25. Although Ms. Smith was shocked and humiliated by Officer Call's line of

5  questioning, she feared that a refusal to answer would affect her ability to become a cadet;

6  she therefore felt compelled to answer the improper questions.

7  26. In the afternoon of December 16, 2010, at the Redding offices, Ms. Smith took

8  and passed the required CHP written psychological exam. While she sat in a room alone

9  taking this exam, Officer Call came into the room and sat at a table in front of Ms. Smith.

10  While plaintiff attempted to focus her attention on the exam, Call insisted on making casual

11  conversation with her which made her very uncomfortable.

12  27. After arriving home, Ms. Smith described Officer Call's behavior to her husband.

13  Although they were both shocked and outraged by Call's behavior, they initially decided to

14  refrain from filing a formal complaint against Call because of concern about an adverse

15  affect on Ms. Smith's future as a CHP officer as well as possible retaliation against Mr.

16  Smith.

17  28. In late April or early May 2011, the Smiths confided in a family friend who was a

18  CHP officer at the Ukiah, California Area Office of the CHP Northern Division about the

19  behavior of Officer Call. Plaintiff is informed and believes, and based thereon alleges that

20  this family friend was troubled that this behavior did not reflect the stated values of the CHP;

21  he therefore reported it to his superior, Captain Paul Davis, the commanding officer of the

22  Ukiah Area Office.

23  29. Plaintiff is informed and believes, and based thereon alleges that Captain Davis,

24  in turn notified Officer Call's superior, Captain T.A. Morrison, Commander for the CHP

25  Northern Division Special Services in Redding that Officer Call had engaged in improper

26  questioning of Ms. Smith during the CVSA which likely amounted to sexual harassment.

27  30. On June 15, 2011, Sergeant Annie Garcia of the CHP Northern Division Redding

28  office met with Ms. Smith at the CHP Resident Post in Fort Bragg, California. Ms. Smith

1    described to Sergeant Garcia what transpired during the CVSA with Officer Call.

2        31. During the meeting of June 15, 2011, Sergeant Garcia provided plaintiff with a
3    CHP "Citizen's Complaint" form. At no time during the relevant period did Sergeant Garcia
4    ask Ms. Smith if she wished to pursue a discrimination complaint pursuant to the CHP's
5    Equal Employment Opportunity ("EEO") procedure. Nor did Sergeant Garcia provide Ms.
6    Smith with any written information or oral explanation regarding the CHP EEO
7    discrimination complaint process.

8        32. Plaintiff is informed and believes, and based thereon alleges that during the
9    relevant time period, Sergeant Garcia was aware that the CHP Citizens' Complaint procedure is a
10   process used for monitoring the conduct and attitudes of CHP employees towards the public and that
11   is not a process used for complaints of discrimination by applicants for employment. Plaintiff is
12   informed and believes, and based thereon further alleges that Sergeant Garcia was aware that
13   a complaint of sexual harassment by an applicant for employment with the CHP must be
14   referred to a CHP EEO investigator for a prompt and effective investigation.

15       33. Trusting that Sergeant Garcia would conduct a thorough and objective
16   investigation into her allegations of misconduct, approximately two or three weeks later, in
17   late June or early July 2011, Ms. Smith filled out and sent the citizen's complaint form to
18   Sergeant Garcia.

19       34. A few days after submitting her citizens' complaint, Ms. Smith was contacted by
20   Sergeant Garcia who informed her that Officer Call had admitted to having asked improper
21   questions during the CVSA and that her accusations against Officer Call had been
22   substantiated. Sergeant Garcia further explained, however, that no further action would be
23   taken regarding plaintiff's complaint. Sergeant Garcia refused to offer any information
24   regarding what, if any, disciplinary action was taken against Officer Call. Ms. Smith
25   informed Sergeant Garcia that she wanted her complaint against Officer Call to continue to
26   whatever next level was appropriate.

27       35. Ms. Smith heard nothing further regarding the status of her complaint until on or
28   about    September 12, 2011, she received a letter from Captain T.A. Morrison. In the letter

SMITH v. CHP, COMPLAINT FOR TITLE VII AND FEHA VIOLATIONS                                    -6-

1  Captain Morrison stated *inter alia* that he had "initiated appropriate steps to ensure that
2  proper questioning and CVSA protocols are followed in the future." In that same letter,
3  Captain Morrison also falsely accused Ms. Smith of not wanting to file a complaint against
4  Officer Call. Further, Captain Morrison informed Ms. Smith that "this incident ... [would]
5  not affect [her] selection for California Highway Patrol, Cadet" and in fact, that she had been
6  recommended for hire by the CHP Background Investigations Unit.

7      36. After receiving this letter from Captain Morrison, Ms. Smith immediately
8  contacted Sergeant Garcia and explained that she did in fact wish to continue the complaint
9  process against Officer Call. She heard nothing further, however, from Sergeant Garcia.

10     37. For approximately two and a half weeks from late September to mid-October
11 2011, Ms. Smith was out-of-town on a family vacation. When she returned home on or
12 about October 16, 2011, she retrieved a certified letter from Captain Morrison dated October
13 6, 2011. In the letter, Captain Morrison alleged that an "I-9" form (an employee eligibility
14 verification form unrelated to her discrimination complaint) had been sent to her for
15 signature but that she had not sent it back.

16     38. In that same letter, Captain Morrison further alleged that Sergeant Garcia had left
17 several telephone messages for Ms. Smith that had been unreturned regarding the necessity
18 of completing this form. Captain Morrison warned Ms. Smith that failure to complete the
19 form within 10 days of the date of his letter "would result in removal of [her] name from the
20 certification list." Prior to receipt of this letter, however, Ms. Smith had not received an I-9
21 form nor had she received any telephone messages from Sergeant Garcia regarding the form.

22     39. Following receipt of Captain Morrison's letter, Ms. Smith immediately contacted
23 CHP background investigator Officer Stephanie Barnwell and explained that she not
24 previously received an I-9 form and was concerned that not having completed the form
25 within 10 days of October 6, 2011 would disqualify her from the application process. Officer
26 Barnwell sent plaintiff an I-9 form which she received two or three days later. She
27 immediately filled out the form and mailed it to the Northern Division office.

28     40. After hearing nothing further regarding the status of her request for continuation

1  of her complaint against Officer Call, in January 2012, Ms. Smith sought advice from
2  Captain Paul Davis. Captain Davis informed plaintiff that he had been told by Captain
3  Morrison that she had been "uncooperative" during the earlier investigation and that she did
4  not wish to file a formal complaint. Ms. Smith was shocked and offended by these
5  allegations.

6      41. Captain Davis soon thereafter provided Ms. Smith with names of three CHP EEO
7  officers and advised her to contact one of them. Plaintiff chose the name of Sergeant Daniel
8  Fansler with whom her husband was acquainted and whom she believed to be fair and
9  honest.

10     42. On February 2, 2012, Ms. Smith contacted Sergeant Fansler by telephone and
11  explained that she had obtained his name from a current list of CHP EEO counselors. She
12  asked if Sergeant Fansler was willing to meet with her. Sergeant Fansler consented to do so.

13     43. That same day, Ms. Smith met with Sergeant Fansler at her home in Willits,
14  California for approximately two hours during which she explained in detail Officer Call's
15  improper behavior during her CVSA as well as her dissatisfaction with how her complaint
16  had been processed by the CHP.

17     44. On February 7, 2012 Sergeant Fansler contacted Ms. Smith and offered her the
18  remedy of re-opening the Citizen's Complaint that she had filed in June 2011. Ms. Smith
19  explained to him that she had not been satisfied with the manner in which the citizen's
20  complaint had been handled and that she wanted to proceed with a formal discrimination
21  complaint.

22     45. On or about February 12, 2012, Ms. Smith again met with Sergeant Fansler and
23  was presented with a "Written Report of Inquiry Informal Discrimination Complaint" which
24  indicated that she "opted to bypass the informal process and proceed directly to a formal
25  investigation request." At that same meeting, Ms. Smith was for the first time, provided a
26  pamphlet containing information regarding the CHP Discrimination Complaint process.

27     46. During that same meeting, Sergeant Fansler also presented Ms. Smith with a
28  Formal Discrimination Complaint form which plaintiff filled out and returned to him on

SMITH v. CHP, COMPLAINT FOR TITLE VII AND FEHA VIOLATIONS                                    -8-

1  February 15, 2012. Plaintiff is informed and believes, and based thereon alleges that her
2  completed Formal Discrimination Complaint was forwarded to the CHP Northern Division
3  Headquarters.

4      47. On or about March 1, 2012, CHP Lieutenant Gregory Baarts, accompanied by
5  CHP Captain George Peck visited Ms. Smith at her home in Willits, California for the
6  ostensible purpose of interviewing plaintiff regarding her discrimination complaint. Ms.
7  Smith, however, found this interview to be more akin to an interrogation. Throughout the
8  interview, Captain Peck maintained a brusk and rude manner. Captain Peck informed her
9  that any information regarding her complaint needed to remain strictly confidential in order
10  to protect the privacy of Officer Call; otherwise it was possible that Officer Call would sue
11  her for slander. This statement had the apparent desired effect of intimidating Ms. Smith and
12  causing her to become reluctant to continue to pursue her complaint of discrimination.

13      48. On April 24, 2012, Officer Stephanie Barnwell telephoned Ms. Smith to inform
14  plaintiff that she needed to return to the Northern Division Redding office on May 22, 2012
15  to re-take the written psychological exam, the same exam that she had successfully passed on
16  December 16, 2010, the day she underwent the CVSA test. She received no explanation
17  regarding why she was required to re-take this test.

18      49. On May 4, 2012. Lt. Baarts visited Ms. Smith at her home to discuss her options
19  for re-taking the written psychological exam. Ms. Smith stated her concern that the results of
20  the psychological exam that she was being forced to re-take might be affected by the
21  discrimination complaint she had filed. In response, Lt. Baarts suggested "putting a wall up"
22  in her mind order to separate the complaint process from the application process. Lt. Baarts
23  further told her that he would get back to her regarding the re-taking of the psychological
24  exam. When she did not hear from him, plaintiff called Lt. Baarts on or about May 15, 2012
25  to once again inquire about the status of the psychological exam. On or about May 25, 2012,
26  she received a telephone message from Lt. Baarts saying he would get back to her within the
27  next week regarding the exam. Hearing nothing further, on or about June 4, 2012, she sent
28  an e-mail to Lt. Baarts once again requesting information about having to re-take the

1   psychological exam.

2       50. On or about June 7, 2012, Ms. Smith received a letter from E.K. Knudsen, Acting
3   Commander of the CHP Administrative Services Division informing her that if she wished to
4   attend the session of CHP Cadet training classes beginning August 1, 2012, she was required
5   to complete the "medical and psychological screening phases" no later than July 1, 2012; if
6   she wished to attend the session of CHP Cadet training classes beginning December 1, 2012,
7   she was required to complete the screening exams no later than November 1, 2012. Ms.
8   Smith received no explanation regarding why she was required to re-take the psychological
9   exam that she had previously taken and passed.

10      51. On or about June 7, 2012, Ms. Smith also received a Letter of Determination from
11  CHP Northern Division Acting Chief T.A. Chad regarding her "internal complaint" alleging
12  that she had been subjected to sexual harassment by Officer Brian Call. The Letter informed
13  her that "there was insufficient evidence to establish that Officer Call's conduct violated
14  departmental discrimination policy." The Letter went on to say that "[t]he investigation did
15  reveal that there was inappropriate conduct pertaining to other departmental policy and
16  appropriate action has been taken." The Letter did not describe or cite the departmental
17  policies which allegedly had or had not been violated by Officer Call. While the Letter
18  informed plaintiff of her right to appeal these findings in writing within 10 days, it provided
19  no further information regarding an appeal process other than a telephone
20  number of the CHP Office of Equal Employment Opportunity.

21      52. On or about June 19, 2012, Ms. Smith appealed the Letter of Determination from
22  Acting Chief T.A. Chad to CHP Commissioner Joseph A. Farrow. In that appeal, she *inter*
23  *alia*, objected to the failure of the Letter of Determination to specify what CHP policies had
24  been considered in order to determine that Officer Call's conduct did not constitute any
25  violation; how Officer Call's audio tape-recorded improper questioning during the CVSA
26  could not be considered sexual harassment or discrimination; and how the vagueness of the
27  Letter gave her no assurance that the CHP had seriously addressed the unlawful behavior
28  engaged in by Officer Call.

SMITH v. CHP, COMPLAINT FOR TITLE VII AND FEHA VIOLATIONS                                    -10-

1   53. On or about August 10, 2012, Ms. Smith received a letter from Commissioner
2   Farrow in response to her appeal. That letter stated *inter alia* that Letters of Determination
3   are meant to provide only a summary of the results of an investigation, not details regarding
4   corrective action; that there was "insufficient evidence to demonstrate a violation of the
5   Department's discrimination policy or that these events were severe or pervasive"; and that
6   he (Commissioner Farrow) was "committed to providing a discrimination-free workplace"
7   where discrimination or retaliation against an employee or applicant will not be tolerated.

8   54. On September 5, 2012, Ms. Smith was interview by CHP Northern Division Chief
9   Bridget Lott and EEO Officer Jeremy Squires. Plaintiff is informed and believes, and based
10  thereon alleges that this investigation was conducted in response to her EEOC Charge of
11  Discrimination filed June 12, 2012. Following the completion of this investigation, the CHP
12  refused to disclose to Ms. Smith, orally or in writing, any results of the investigation,
13  including its disposition or information regarding any action taken in response to plaintiff's
14  charge of retaliation.

15  55. Plaintiff is informed and believes, and based thereon alleges that after being
16  advised of his improper behavior, defendant CHP continued to employ Officer Call in the
17  capacity of a CHP background investigator where he was permitted to administer CVSA's to
18  female applicants for employment with the CHP.

19  56. Having repeatedly been targeted for discrimination and retaliation during her CHP
20  application and complaint processes, Ms. Smith became convinced that she would continue
21  to encounter adverse treatment during her quest to become a CHP officer as well as during
22  her possible career with defendant. In light of these insurmountable obstacles, Ms. Smith did
23  not continue with the CHP application process. She was constructively barred from
24  becoming a CHP cadet by the discriminatory practices of defendant.

25  ## VI. **GENERAL LEGAL PRINCIPLES**
26  ## **TITLE VII**

27  57. Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000-e *et seq.*) (Title VII)
28  prohibits employment discrimination based on color, religion, sex, or national origin. 42

1 | U.S.C. § 2000e-2(a).

2 |     58. Title VII also prohibits retaliation against job applicants (42 U.S.C. §2000e-2(a))
3 | for opposing any practice that violates Title VII or for making a charge or participating in
4 | any investigation, proceeding, or hearing under Title VII. 42 U.S.C. §2000e-3(a).

5 |     59. The anti-retaliation provision of Title VII "covers those (and only those) employer
6 | actions that would have been materially adverse to a reasonable employee or job applicant. . .
7 | (T)hat means the employer's actions must be harmful to the point that they could well
8 | dissuade a reasonable worker from making or supporting a charge of discrimination."
9 | *Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (parenthesis in
10 | original).

11 | **CALIFORNIA FEHA**

12 |     60. The California FEHA protects the right of all persons to seek, obtain, and hold
13 | employment without discrimination based on race, religion, color, national origin, ancestry,
14 | physical or mental disability, medical condition, marital status, sex, sexual orientation, age (at
15 | least 40), or pregnancy. Govt C §§ 12940(a), 12941, 12945(a).

16 |     61. The FEHA further prohibits an employer from retaliating against "any person" for
17 | opposing any discriminatory practice forbidden by FEHA (the "opposition clause") or for
18 | filing a complaint, testifying, or assisting in any proceeding under FEHA (the "participation
19 | clause"). Govt C § 12940(h).

20 |     62. Under Govt C § 12940(h), a plaintiff's sincere and reasonable belief that he or she
21 | opposed discrimination is sufficient to constitute engagement in protected activity. *Yanowitz*
22 | *v. L'Oreal USA, Inc.*, 36 Cal.4th 1028 (2005).

23 |     63. The FEHA further permits a separate and independent claim for failure to prevent
24 | and investigate retaliation. *Taylor v. City of Los Angeles Department of Water & Power,* 144
25 | Cal. App. 4th 1216 (2006).

26 | **ATTORNEYS' FEES AND COSTS**

27 |     64. Ms. Smith has been required to retain the undersigned attorneys to prosecute this
28 | action. She is entitled to recover reasonable attorneys' fees and expenses pursuant to 42

1    U.S.C. § 2000e-5(k) and California Government Code § 12965(b).

2        65. Ms. Smith is also entitled to recover costs under Fed. R. Civ. P. 54(d) and other
3    applicable law.

4                          **VII.  FIRST CLAIM FOR RELIEF**
                      **RETALIATION UNDER TITLE VII**
5                          **(42 U.S.C. § 2000e-3(a))**

6        66. Plaintiff incorporates by reference as if fully set forth herein the allegations
7    contained in paragraphs 1 through 65.

8        67. As per 42 U.S.C. §2000e-3(a), retaliation against employees or applicants for
9    employment who engage in protected activity is prohibited.

10       68. As set forth above, Ms. Smith was an applicant for employment as a CHP cadet.
11   She encountered severe sexual harassment by a CHP employee during a background
12   screening process.

13       69. As further set forth above, Ms. Smith opposed what she reasonably believed to be
14   sexual harassment in violation of Title VII.  She also participated in a complaint procedure
15   by filing charges of discrimination with the CHP.

16       70. Rather than seek to expose and remove barriers to equality, in response to Ms.
17   Smith's opposition and participation, the CHP *inter alia,* engaged in a series of actions aimed
18   at  dissuading plaintiff from filing and pursuing a charge of discrimination;  it treated her
19   with hostility and disdain during the investigation of her charges;  and it indicated that it
20   considered the sexually harassing behavior about which she complained to be acceptable –
21   actions likely to deter discrimination victims from complaining to this employer, to the
22   EEOC or to the courts.

23       71. The CHP's actions effectively dissuaded Ms. Smith from continuing to pursue
24   employment with the CHP.

25       72. As a direct and proximate result of the CHP's unlawful acts, Ms. Smith suffered
26   and continues to suffer past and future lost earnings and benefits, emotional pain, suffering,
27   professional and personal embarrassment, humiliation, loss of enjoyment of life, and
28   inconvenience all according to proof.

1    73. The CHP's actions against Ms. Smith have caused and will continue to cause

2  plaintiff harm in that plaintiff will incur attorney fees and costs of suit including expert

3  witness fees, which will be claimed in an amount to be proven following trial.

4    WHEREFORE, plaintiff prays for relief and judgment as hereinafter set forth.

5  **VIII.  SECOND CLAIM FOR RELIEF**
**RETALIATION UNDER THE CALIFORNIA FEHA**

6  **(California Government Code §12940(h))**

7    74. Plaintiff incorporates by reference as if fully set forth herein the allegations

8  contained in paragraphs 1 through 73.

9    75. California Govt C § 12940(h) provides that it shall be an unlawful employment

10  practice "[f]or any employer . . . to discharge, expel, or otherwise discriminate against any

11  person because the person has opposed any practices forbidden [by the FEHA] or because the

12  person has filed a complaint, testified or assisted in any [FEHA proceeding]."

13    76. As set forth above, Ms. Smith was an applicant for employment as a CHP cadet.

14  She encountered severe sexual harassment by a CHP employee during a background

15  screening process.

16    77. As further set forth above, Ms. Smith opposed what she reasonably believed to be

17  sexual harassment in violation of the California FEHA. She also participated in a complaint

18  procedure by filing charges of discrimination with the CHP.

19    78. Rather than seek to expose and remove barriers to equality, in response to Ms.

20  Smith's opposition and participation, the CHP *inter alia*, engaged in a series of actions aimed

21  at dissuading plaintiff from filing and pursuing a charge of discrimination;  it treated her

22  with hostility and disdain during the pendency of the investigation of her charges;  and it

23  indicated that it considered the sexually harassing behavior about which she complained to be

24  acceptable – actions likely to deter discrimination victims from complaining to this employer,

25  to the DFEH or to the courts.

26    79. The CHP's actions effectively dissuaded Ms. Smith from continuing to pursue

27  employment with the CHP.

28    80. As a direct and proximate result of the CHP's unlawful acts, Ms. Smith suffered

SMITH v. CHP, COMPLAINT FOR TITLE VII AND FEHA VIOLATIONS                                          -14-

1   and continues to suffer past and future lost earnings and benefits, emotional pain, suffering,

2   professional and personal embarrassment, humiliation, loss of enjoyment of life, and

3   inconvenience all according to proof.

4       81.  The CHP's actions against Ms. Smith have caused and will continue to cause

5   plaintiff harm in that plaintiff will incur attorney fees and costs of suit including expert

6   witness fees, which will be claimed in an amount to be proven following trial.

7       WHEREFORE, plaintiff prays for relief and judgment as hereinafter set forth.

8                           **IX.  RELIEF REQUESTED**

9       WHEREFORE, plaintiff respectfully requests that this Court assume jurisdiction in

10  this entire matter and on both claims:

11      A.  Enter an order declaring that the CHP violated the rights of Ms. Smith under Title

12  VII and the California Fair Employment and Housing Act by retaliating against her for

13  engaging in protected activity;

14      B.  Award plaintiff compensatory damages and monetary relief as permitted by Title

15  VII and the California FEHA and other applicable law, including but not limited to,

16  compensatory damages, and damages for pain, humiliation, and the emotional distress

17  suffered by her as a result of the CHP's retaliatory actions;

18      C.  Award plaintiff her reasonable attorneys' fees, costs, and expenses;

19      D.  Award pre and post-judgment interest; and

20      E.  Order such other and further relief as the Court deems appropriate.

21

22  Dated: March 21, 2013                    Respectfully submitted,

23                                           LAW OFFICES OF SUSAN SHER

24

25                                           By: _____

26                                               Susan Sher
                                                 Attorney for Plaintiff,
27                                               NICOLE SUMMER SMITH

28

1

## X.  JURY DEMAND

2      Plaintiff demands trial by jury of all claims and causes of action so triable.

3

4  Dated: March 2\, 2013                              Respectfully submitted,

5                                                         LAW OFFICES OF SUSAN SHER

6

7                                                    By: _____
                                                         Susan Sher
8                                                        Attorney for Plaintiff,
                                                         NICOLE SUMMER SMITH
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | FEPA | |
| X | EEOC | 550-2012-01673 |

## California Department Of Fair Employment & Housing

State or local Agency, if any

and EEOC

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| **Nicole Summer Smith** | | |

| Street Address | City, State and ZIP Code |
|---|---|
| **C/O Susan Sher, Law Offices Of, 116 South State Street, Ukiah, CA 95482** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (include Area Code) |
|---|---|---|
| **State of California, Highway Patrol** | | **(530)225-2715** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2485 Sonoma Street, Redding, CA 96001** | |

| Name | No. Employees, Members | Phone No. (include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

| RACE | COLOR | X SEX | RELIGION | NATIONAL ORIGIN |
|---|---|---|---|---|

| X RETALIATION | AGE | DISABILITY | GENETIC INFORMATION |
|---|---|---|---|

OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                Latest
                        **06-12-2012**

CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See attached.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date                    Charging Party Signature | |

## ***CHARGE OF DISCRIMINATION***

**EEOC#**
**DFEH#**
State or local agency:  CA Dept of Fair Employment & Housing and **EEOC**

---

**NAME**: NICOLE SUMMER SMITH          **HOME TEL**:  (707) 972-7715
**ADDRESS**: 2701 Deer Lane, Willits, CA 95482
**DATE OF BIRTH**: 3/30/83          **SOCIAL SECURITY NO**: 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
**SEX**: Female          **NATIONAL ORIGIN**:  Hispanic

---

**NAME OF EMPLOYER WHO DISCRIMINATED**: STATE OF CALIFORNIA,
                                        DEPARTMENT OF HIGHWAY PATROL
**NUMBER OF EMPLOYEES**: 1,000 +       **TELEPHONE**: (530) 225-2715
**ADDRESS**: 2485 Sonoma Street, Redding, CA 96001
**COUNTY**: SHASTA
**NATURE OF BUSINESS**: Public Law Enforcement Agency

---

**NAME OF INDIVIDUAL EMPLOYEE COMPLAINED OF**: T.A. MORRISON
**TITLE**: CAPTAIN, COMMANDER NORTHERN DIVISION SPECIAL SERVICES
**ADDRESS**: 2485 Sonoma Street, Redding, CA 96001
**TELEPHONE**: (530) 225-2715
**COUNTY**: SHASTA

---

**CAUSE OF DISCRIMINATION BASED ON**: RETALIATION FOR ENGAGING IN
PROTECTED ACTIVITY
**DATE DISCRIMINATION TOOK PLACE**: Earliest: 9/12/11;  Latest: ongoing

---

**THE PARTICULARS ARE**:

I.    On December 16, 2010, I underwent a Critical Voice Stress Analysis ("CVSA") test
      as part of a background screening process for selection to become a California
      Highway Patrol ("CHP") Cadet.  By that time, I had all ready successfully completed the
      CHP written test, the physical ability test, the Qualification Appraisal Panel Interview
      and met with background investigator Officer Stephanie Barnwell to review my personal
      history statement.  It appeared that I was well on my way to being accepted into the CHP
      Academy.

II.   During the CVSA, CHP Officer Brian Call who administered the test, asked me several
      inappropriate, highly personal and offensive questions regarding my sex life.  Although I
      was shocked and  humiliated by this behavior, I feared that a refusal to answer would
      affect my ability to become a cadet.  I therefore felt compelled to answer.  During my
      written psychological test which I took later that same day, Officer Call insisted on
      sitting at a table in front of me and making casual conversation which made me very
      uncomfortable.

CHARGE OF DISCRIMINATION OF NICOLE SUMMER SMITH
page two

III.    I also feared that complaining about the offensive behavior of Officer Call during the
        testing process might have an adverse affect on my future as a CHP officer. I therefore
        initially decided to not complain. However, a family friend who is a CHP officer
        reported the illegal behavior of Officer Call to a CHP captain which I understand
        triggered a CHP investigation.

IV.    After CHP commanding officers learned of the misconduct of Officer Call, on June 15,
        2011, Sergeant Annie Garcia of the CHP Northern Division office in Redding, California
        met with me at my mother's residence in Fort Bragg, California. Sergeant Garcia
        provided me with a "citizen's complaint" form. At no time did Sergeant Garcia ask me if
        I wanted to pursue a formal complaint or provide me with any written information or oral
        explanation regarding the CHP discrimination complaint process. After consulting with
        my husband who is also a CHP officer, approximately two or three weeks later in late
        June or early July 2011, I filled out the citizen's complaint form which I sent to Sergeant
        Garcia.

V.     A few days after she received my citizens' complaint, I was contacted by Sergeant Garcia
        who informed me that my accusations against Officer Call had been substantiated but
        that no further action would be taken regarding my complaint. I explained to Sgt. Garcia
        that I wanted the complaint process to continue. I heard nothing further until on or about
        September 12, 2011. I received a letter from Captain T.A. Morrison, the Northern
        Division Commander which falsely stated that I had chosen not to file a complaint
        against Officer Call. Captain Morrison also informed me that "this incident . . . will not
        affect [my] selection for California Highway Patrol Cadet" and in fact, that I had been
        chosen for hire by the CHP Background Investigations Unit. I immediately contacted
        Sergeant Garcia and explained that I did in fact wish to continue the complaint process
        against Officer Call. However, I heard nothing further from Sergeant Garcia.

VI.    For approximately two and a half weeks from late September to mid-October 2011, I was
        out-of-town on a family vacation. When I returned home on or about October 16, 2011, I
        went to my local post office to pick up a certified letter from Captain Morrison dated
        October 6, 2011. In the letter, Captain Morrison alleged that an "I-9" form (an employee
        eligibility verification form unrelated to my discrimination complaint) had been sent to
        me for signature but I had not sent it back. Captain Morrison also alleged that Sergeant
        Garcia had left several telephone messages for me that had been unreturned regarding the
        necessity of completing this form. Captain Morrison warned me that failure to complete
        the form within 10 days of the date of his letter "would result in removal of [my] name
        from the certification list." Prior to receipt of this letter, however, I had not received an
        I-9 form nor had I received any telephone messages from Sergeant Garcia. I immediately
        contacted CHP background investigator Officer Barnwell and explained that I not
        previously received an I-9 form and was concerned that my not having completed the

form within 10 days of October 6, 2011 would disqualify me from the application process. Officer Barnwell sent me another I-9 form which I received two or three days later and immediately filled out and sent to the Northern Division office.

VII.   Hearing nothing further regarding my citizen's complaint, in January 2012, I contacted Captain Paul Davis with whom I was acquainted regarding the status of my complaint. Captain Davis is the commanding officer of the Ukiah, California office of the CHP Northern Division. He informed me that he had been told by Captain Morrison that I had been "uncooperative" during the investigation and that I did not wish to file a formal complaint. I was shocked and offended by these accusations.

VIII.  Captain Davis provided me with names of three CHP EEO officers and advised me to contact one of them. I chose the name of Sergeant Daniel Fansler with whom my husband was acquainted and believed to be fair and honest. I met with Sergeant Fansler at my home on February 2, 2012 for approximately 2 hours and explained in detail Officer Call's offensive behavior during my CVSA as well as my dissatisfaction with the CHP's inadequate response to my citizen's complaint.

IX.    On February 7, Sergeant Fansler offered me the remedy of re-opening the citizen's complaint that I had filed in June 2011. I explained to him that I had not been satisfied with the manner in which the citizen's complaint had been handled and that I wanted to proceed with a formal discrimination complaint. On or about February 12, I met with Sergeant Fansler who presented me with a "Written Report of Inquiry Informal Discrimination Complaint" which indicated that I "opted to bypass the informal process and proceed directly to a formal investigation request." That same day I was for the first time, provided with a pamphlet containing information regarding the CHP discrimination complaint process. On February 12, 2012, Sergeant Fansler also presented me with a Formal Discrimination Complaint form which I filled out and returned to him on February 15, 2012. I understand that my completed Formal Discrimination Complaint was forwarded to the CHP Northern Division.

X.     On or about March 1, 2012, CHP Lt. Gregory Baarts, accompanied by CHP Captain George Peck visited me at my home in order to interview me regarding my complaint. I found this interview to be more akin to an interrogation. Captain Peck who conducted the interview treated me in a rude and hostile manner. I was informed that any information regarding my complaint had to remain strictly confidential in order to protect the privacy of Officer Call (about whom I had made the complaint of discrimination); otherwise Officer Call could sue me for slander. This statement intimidated me and had the apparent desired effect making me reluctant to continue to pursue my complaint of discrimination.

CHARGE OF DISCRIMINATION OF NICOLE SUMMER SMITH
page four

XI.     On April 24, 2012, Officer Stephanie Barnwell telephoned me to inform me that I needed
        to return to the Northern Division Redding office on May 22 to re-take the written
        psychological exam. This is the same exam that I had successfully passed on December
        16, 2010, the day I underwent the CVSA test. I received no explanation regarding why I
        was required to re-take this test.

XII.    On May 4, 2012, Lt. Baarts visited me at my home to discuss my options for re-taking
        the written psychological exam which he explained were either to: take the exam on
        May 22, 2012 at the Northern Division Redding office; take the exam at another CHP
        division (Vallejo or Sacramento) and therefore transfer all of my background information
        to that division; or request a 60-day waiver to postpone the taking of the exam. I stated
        my concern that the results of the psychological exam that I was being forced to re-take
        might be affected by the discrimination complaint I had filed. In response, Lt. Baarts
        suggested "putting a wall up" in my mind order to separate the complaint process from
        the application process. Lt. Baarts told me that he would get back to me regarding the re-
        taking of the psychological exam. When I did not hear from him, I called Lt. Baarts on
        or about May 15, 2012 to once again inquire about the status of the psychological exam.
        On or about May 25, 2012, I received a telephone message from Lt. Baarts saying he
        would get back to me within the next week regarding the exam. Hearing nothing further,
        on or about June 4, 2012, I sent an e-mail to Lt. Baarts once again requesting information
        about having to re-take the psychological exam.

XIII.   On or about June 7, 2012, I received a letter from E.K. Knudsen, Acting Commander of
        the CHP Administrative Services Division informing me that if I wished to attend the
        session of CHP Cadet training classes beginning August 1, 2012, I was required to
        complete the "medical and psychological screening phases" no later than July 1, 2012
        and if I wished to attend the session of CHP Cadet training classes beginning December
        1, 2012, I was required to complete the screening exams no later than November 1, 2012.
        I received no explanation regarding why I was required to re-take the psychological exam
        that I had previously taken and passed.

XIV.    On or about June 7, 2012, I also received a Letter of Determination from Northern
        Division Acting Chief T.A. Chad regarding my "internal complaint" alleging that I had
        been subjected to sexual harassment by Officer Brian Call . The Letter informed me that
        "there was insufficient evidence to establish that Officer Call's conduct violated
        departmental discrimination policy." The letter went on to say that "[t]he investigation
        did reveal that there was inappropriate conduct pertaining to other departmental policy
        and appropriate action has been taken." The letter did not describe or cite the
        departmental policies which allegedly had or had not been violated by Officer Call.
        While the letter informed me of my right to appeal these findings in writing within 10
        days, it provided no further information regarding an appeal process other a telephone

CHARGE OF DISCRIMINATION OF NICOLE SUMMER SMITH
page five

number of the Office of Equal Employment Opportunity.

XV.    Although on September 12, 2011 I was informed by Captain Morrison that I had been
       recommended for hire, since I asserted my legal right to file a formal discrimination
       complaint, I have faced retaliation, including *inter alia*:  being discouraged from filing a
       formal complaint of discrimination;  facing false accusations of not cooperating with the
       initial investigation into my complaint;  having the recommendation for my hire
       rescinded following my filing of a formal complaint;  being required to re-take my
       written psychological exam even though I had all ready taken and passed the exam;
       being treated with mistrust and hostility during the investigation of my complaint;  and
       being informed that despite uncontroverted evidence of Officer Call having sexually
       harassed me during the CVSA, no departmental discrimination policy had been violated.

XVI.   Further, I am informed and believe that despite my being told that my allegations of
       discrimination (sexual harassment) against Officer Call had been substantiated, the CHP
       has continued to employ Officer Call and particularly, to allow him to work in the
       capacity of a CHP background investigator where he may sexually harass other female
       CHP applicants.

XVII.  I believe that the CHP retaliated against me for engaging in the protected activities of
       opposing discrimination and engaging in the agency's EEO complaint process.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  6|11|12

Nicole Summer Smith
NICOLE SUMMER SMITH,
CHARGING PARTY

at  Willits California
    City

# EXHIBIT "B"



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
2020 6175

*950 Pennsylvania Avenue, N.W*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

January 3, 2013

Ms. Nicole Summer Smith
c/o Susan Sher, Esquire
Law Offices of Susan Sher
Attorneys at Law
116 South State Street
Ukiah, CA  95482

Re: EEOC Charge Against State of California, Dept. of Highway Patrol, et al.
    No. 550201201673

Dear Ms. Summer Smith:

Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since the date
the Commission assumed jurisdiction over the charge, and no suit based
thereon has been filed by this Department, and because you through your
attorney have specifically requested this Notice, you are hereby notified
that you have the right to institute a civil action under Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against
the above-named respondent.

If you choose to commence a civil action, such suit must be filed in
the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC
San Francisco District Office, San Francisco, CA.

This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Thomas E. Perez
Assistant Attorney General
Civil Rights Division

by   Karen L. Ferguson

Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: San Francisco District Office, EEOC
    State of California, Dept. of Highway Patrol, et al.

# EXHIBIT "C"

# UNDER THE PROVISIONS OF THE CALIFORNIA
## FAIR EMPLOYMENT AND HOUSING ACT

DFEH # *E201112E/335-00-sb*

COMPLAINANT'S NAME (indicate Mr. or Ms.)
SMITH, Nicole Summer (Ms.)

TELEPHONE NUMBER (INCLUDE AREA CODE)
(707) 972-7715

ADDRESS
2701 Deer Lane

| CITY | STATE | ZIP CODE | COUNTY |
|------|-------|----------|--------|
| Willits | California | 95490 | Mendocino |

## NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME
State of CA Highway Patrol
ADDRESS
2485 Sonoma Street

| CITY | STATE | ZIP CODE | COUNTY |
|------|-------|----------|--------|
| Redding | CA | 96001 | Shasta |

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month/day/year):
October 6, 2011

NO. OF EMPLOYEES/ MEMBERS:
6000

CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOX(ES)
- RACE
- COLOR
- ☒ SEX
- PREGNANCY
- AGE
- RELIGION
- MARITAL STATUS
- DISABILITY
- SEXUAL ORIENTATION
- OTHER (SPECIFY) Harrassment
- NATIONAL ORIGIN/ANCESTRY
- DENIAL OF FAMILY/MEDICAL LEAVE
- CANCER
- GENETIC CHARACTERISTICS

I believe that on or about

(date or dates) December 16, 2010

respondent CHP Officer Brian Call

(act or acts of harm) Sexually Harassed and

Has continued to not completed my academy entry process

because of my)

(protected group status) sex (female

in violation of the California Fair Employment and Housing Act.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated April 18, 2012
At Willits
City

COMPLAINANT'S SIGNATURE
APR 2 3 2012
DATE FILED:

STATE OF CALIFORNIA

# EXHIBIT "D"



STATE OF CALIFORNIA | State and Consumer Services Agency

GOVERNOR EDMUND G. BROWN JR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

DIRECTOR PHYLLIS W. CHENG

(800) 884-1684 | Videophone for the DEAF (916) 226-5285
TTY: (800) 700-2320|www.dfeh.ca.gov |email: contact.center@dfeh.ca.gov

May 17, 2012

Nicole Summer Smith
2701 Deer Lane
Willits, CA  95490

RE:    E201112E1335-00-sb
        Smith/State of CA Highway Patrol

Dear Nicole Summer Smith:

## NOTICE OF CASE CLOSURE

The consultant assigned to handle the above-referenced discrimination complaint
that was filed with the Department of Fair Employment and Housing (DFEH) has
recommended that the case be closed on the basis of: An Administrative Decision.

Please be advised that this recommendation has been accepted and the case has
been closed effective April 23, 2012.

This letter is also the Right-To-Sue Notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the
Fair Employment and Housing Act against the person, employer, labor organization
or employment agency named in the above-referenced complaint. The civil action
must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment
Opportunity Commission (EEOC) must be visited to file a complaint within 30 days
of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged
discriminatory act, whichever is earlier.

| HEADQUARTERS | BAKERSFIELD | FRESNO | LOS ANGELES | OAKLAND | SAN JOSE |
|---|---|---|---|---|---|
| 2218 Kausen Drive | 4800 Stockdale Highway | 1277 E. Alluvial Avenue | 1055 West 7ᵗʰ Street | 1515 Clay Street | 2570 N. First Street |
| Suite 100 | Suite 215 | Suite 101 | Suite 1400 | Suite 701 | Suite 480 |
| Elk Grove, CA  95758 | Bakersfield, CA  93309 | Fresno, CA  93720 | Los Angeles, CA  90017 | Oakland, CA  94612 | San Jose, CA  95131 |
| (916) 478-7251 | (661) 395-2729 | (559) 244-4760 | (213) 439-6799 | (510) 622-2941 | (408) 325-0344 |

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless
the case is still open at the end of the three-year period.

Sincerely,

*Allan H. Pederson*

Allan H. Pederson
District Administrator
Sacramento District

cc:   Case File

T.A. Morrison
Captain
State of CA Highway Patrol
2485 Sonoma Street
Redding, CA  96001