IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NICOLE SUMMER SMITH,

    Plaintiff,

v.

THE STATE OF CALIFORNIA
DEPARTMENT OF HIGHWAY PATROL,

    Defendant.

               /

No. C 13-01341 WHA

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION

In this retaliation action, defendant moves to dismiss. After full consideration of the parties' briefs and a hearing, defendant's motion to dismiss is **DENIED**.

## STATEMENT

At the outset, it is worth noting that there is no sexual harassment claim in this case; instead, the claim is for alleged retaliation for *complaining* about sexual harassment.

Here are the facts alleged. Plaintiff Nicole Summer Smith was an applicant for employment as a California Highway Patrol cadet beginning in April 2009 (Compl. ¶ 19). As part of the background screening process for possible employment, CHP Officer Brian Call administered a critical voice stress analysis ("CVSA") test on Applicant Smith (*id*. at ¶ 23). During the test, Officer Call allegedly asked Applicant Smith intrusive, personal, and offensive questions about her sex life; to wit, how old was she when she lost her virginity, how many

1   sexual partners had she had, and would she ever cheat on her husband (*ibid.*).  Officer Call also
2   asked Applicant Smith if she found him attractive (*ibid.*).  On the same day, Applicant Smith
3   took and passed a second exam, the CHP written psychological exam (*id*. at ¶ 26).

4         Applicant Smith confided in a friend who was also a CHP officer about Officer Call's
5   behavior.  The friend reported the behavior to his superior officer, who in turn notified Officer
6   Call's superior (*id*. at ¶¶ 28–29).  A CHP officer then met with Applicant Smith in June 2011
7   to discuss the incident (*id*. at ¶ 30).  Applicant Smith filled out and returned a CHP citizen's
8   complaint form (*id*. at ¶ 33).  She was informed that her allegations had been substantiated, but
9   CHP refused to tell Applicant Smith what, if any, disciplinary actions would be taken against
10  Officer Call (*id*. at ¶ 34).  Applicant Smith informed CHP that she wanted her complaint to
11  continue to "whatever next level was appropriate" (*ibid*.).  Hearing nothing for some months,
12  Applicant Smith contacted a CHP officer who, after offering to re-open her citizen's complaint,
13  provided Applicant Smith with a formal discrimination complaint form which plaintiff filled out
14  and returned (*id*. at ¶¶ 44, 46).

15        In March 2012, two CHP officers visited Applicant Smith at her home to interview her
16  regarding her discrimination complaint (*id*. at ¶ 47).  They warned Applicant Smith to keep her
17  complaint "strictly confidential" or Officer Call might "sue her for slander" (*ibid*.).
18  Approximately one month later, CHP telephoned Applicant Smith and informed her, without
19  explanation, that she needed to re-take the written psychological exam she had previously taken
20  and passed (*id.* at ¶ 48).  She did not re-take the exam.

21        Applicant Smith alleges she was "targeted for discrimination and retaliation during her
22  CHP application and complaint process" and that she would continue to encounter adverse
23  treatment both in the application process and, in the event she was hired, in the course of her
24  future employment with CHP (*id*. at ¶ 56).  She further alleges she was constructively barred
25  from becoming a CHP cadet by the CHP's retaliatory actions (*ibid*.).  Applicant Smith therefore
26  did not continue the CHP application process (*ibid*.).

27        Applicant Smith has filed a claim for retaliation under Title VII and the California Fair
28  Employment and Housing Act ("FEHA").  Assuming arguendo the truth of the foregoing

allegations, CHP moves to dismiss, arguing that Applicant Smith's allegations do not rise to the level of retaliation as a matter of law.

## ANALYSIS

### 1. LEGAL STANDARD.

CHP moves to dismiss Applicant Smith's complaint for failure to state a claim upon which relief can be granted. While a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party for a Rule 12(b) motion, "a complaint need not contained detailed factual allegations . . . [but] must plead enough facts to state a claim to relief that is plausible on its face." *Cousins v. LOCKYER,* 568 F.3d 1063, 1067 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Title VII makes it unlawful for an employer "to discriminate against any of [its] employees or applicants for employment . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. 2000e-3(a). California FEHA makes it an unlawful employment practice for an employer to "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h).

Title VII's anti-retaliation provision "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). The Supreme Court "phrase[d] the standard in general terms because the significance of any given act of retaliation will depend upon the particular circumstances. Context matters." *Id.* at 69. In the context of an employee suing her employer for complaining about sexual harassment under Title VII's anti-retaliation provision, the Supreme Court held materially adverse to mean "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or

3

supporting a charge of discrimination." *Id.* at 57.  The appropriate standard here is whether the employer's actions were harmful to the point that they could well dissuade a reasonable applicant from making or supporting a charge of discrimination or from continuing her employment application.  "An employee's decision to report discriminatory behavior cannot immunize the employee from those petty slights or minor annoyances that often take place at work and that all employees experience" (*ibid.*).

### 2. PLAINTIFF HAS PLED SUFFICIENT FACTS TO OVERCOME A MOTION TO DISMISS.

CHP claims Applicant Smith's allegations, seen in light most favorable to her, "do not add up to even a petty slight." (Dkt. No. 9 at 8).  This order disagrees.  Taking the allegations in the complaint as true, it is plausible that CHP engaged in treatment that would dissuade a reasonable applicant from continuing with the application.

CHP's demand that Applicant Smith re-take and re-pass the same exam imposed a higher standard on Applicant Smith than other applicants who only had to take and pass the exam once.  Making her do twice what others only had to do once was retaliation for complaining or so it can be reasonably inferred from the pleading.  It was a way to force her to retract her complaint in exchange for a job or to dissuade her from continuing the application process.  In any case, singling out Applicant Smith to re-take a written exam she had already passed is not treatment that all applicants experience.  This was more than a petty slight or minor annoyance.

In a footnote and again at oral argument, CHP contends that because Applicant Smith "voluntarily" decided to withdraw her application, she is barred from making a retaliation claim, relying on *Ruggles v. California Polytechnic State University,* 797 F.2d 782 (1986) (Dkt. No. 9 at 8 n.1).  In *Ruggles,* a former part-time university instructor sued under Title VII, alleging the university retaliated against her by eliminating a tenure-track teaching position she had applied for after she had filed an EEOC complaint against the university.  Our court of appeals held that the university's failure-to-hire was retaliatory action under Title VII.

*Ruggles* is inapposite.  *First,* this is not a failure-to-hire action.  Applicant Smith does not allege CHP retaliated against her by failing to hire her, but rather by engaging in a series of harmful acts that dissuaded her from continuing with the application process.  When the CHP

4

formally interviewed Applicant Smith about her sexual harassment complaint at her home, a CHP officer warned her that Officer Call might sue her for slander if she told anyone about the alleged harassment. Given the context of a pending employment application, it is plausible to infer that this warning was a veiled threat to Applicant Smith to abandon her complaint, to withdraw her employment application, or both. *Second,* the Supreme Court in *Burlington* broadened applicant retaliation protections beyond the failure-to-hire context. "The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm" and is not limited to "so-called 'ultimate employment decisions.'" *Id.* at 67 (citation omitted).

CHP further states that it could not have engaged in retaliatory action because Applicant Smith alleges she was told that she had been "approved for hire" (Dkt. No. 9 at 8 n.1). The complaint does not allege that Applicant Smith had been approved for hire. The closest it gets is that "she had been recommended for hire by the CHP Background Investigations Unit" (Dkt. No. 1 at 7). Applicant Smith was recommended before she formally filed a complaint against Officer Call. It was only after she had formally filed a complaint against Officer Call that CHP allegedly forced her to re-take the exam she had passed and made veiled threats to her about the possibility of being sued for slander.

For the purposes of a Rule 12(b)(6) motion limited to the four corners of the complaint, these actions are more than petty slights or minor annoyances. Discovery and trial will reveal whether the allegations are true.

### 3. JUDICIAL NOTICE.

This order takes judicial notice of 11 California Administrative Code Section 1955(b) (Peace Officer Psychological Evaluation) pursuant to Federal Rule of Evidence 201. CHP contends this document shows that requiring Applicant Smith to re-take the exam was not retaliatory because Applicant Smith had taken the exam over a year before and "[t]he psychological evaluation must be completed within one year prior to date of employment." Cal. Admin. Code tit. 11, § 1955(b).

This contention is not persuasive. The psychological *evaluation* to which the Section 1955(b) refers is different from the written psychological *exam* Applicant Smith alleges she had to re-take. Section 1955(a) of the code states that a physician, surgeon, or psychologist conducts the psychological evaluation. Cal. Admin. Code tit. 11, § 1955(a). The complaint alleges Applicant Smith was required to re-take the required CHP written psychological exam. These are necessarily different tests.

The complaint alleges Applicant Smith was required to re-take the same test she had previously passed and nothing in subsection (d) states that other sources of information for the psychological evaluation be completed within one year prior to date of employment. While subsection (b) state the psychological evaluation must be completed within one year prior to employment, there is no such time requirement for the required sources of information in subsection (d). For these reasons, Section 1955(b) does not negate Applicant Smith's allegation.

## CONCLUSION

Defendant's motion to dismiss the complaint is **DENIED.** The answer is due by **JUNE 20, 2013**.

**IT IS SO ORDERED.**

Dated: June 10, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6