UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE SUMMER SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>THE STATE OF CALIFORNIA DEPARTMENT OF HIGHWAY PATROL,<br><br>    Defendant. | Case No. 13-cv-01341-JD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In 2010, while applying to be a cadet with defendant, the California Highway Patrol ("CHP"), plaintiff Nicole Summer Smith suffered an incident that she describes as sexual harassment and that the CHP concedes was inappropriate. Smith stuck with the cadet application process after that incident and eventually was recommended for hire by the CHP, but she voluntarily terminated her candidacy. In the complaint, Smith says she walked away from the job because the CHP subjected her to retaliation for filing a complaint about the alleged sexual harassment incident, which dissuaded her from accepting CHP employment. In fact, Smith basically alleges that all of her interactions with the CHP for several years after the 2010 incident were a form of retaliation. Smith sued the CHP in March 2013 for retaliation under Title VII of the Civil Rights Act of 1964 and California's Fair Employment and Housing Act ("FEHA"). Dkt. No. 1. This case is about retaliation only. Smith did not file a sexual harassment claim.

This order addresses the CHP's motion for summary judgment on Smith's claims. Dkt. No. 36. The Court has spent a substantial amount of time sifting through the parties' papers to resolve the motion. Smith made this process unnecessarily difficult by failing to identify what exactly she contends was retaliatory over a multi-year period of frequent interactions with the

1  CHP. Despite the vagueness, the Court has determined that some of Smith's allegations have
2  enough disputed evidence behind them to go to trial. Consequently, the Court grants in part and
3  denies in part the CHP's motion.

**BACKGROUND**

Smith comes from a family with ties to the CHP and decided that she wanted to join the department. Dkt. No. 47 at 1. On December 16, 2010, as part of the CHP cadet application process, Smith took a background screening test -- the Critical Voice Stress Analysis ("CVSA") test -- at the CHP Northern Division headquarters in Redding, California. Dkt. No. 45 at 2. Smith avers that the officer administering the test, CHP Officer Brian Call, asked several intrusive, highly personal and offensive questions about her sex life, including: how old was she when she lost her virginity, how many sexual partners had she had, would she ever consider cheating on her husband, and did she find him (Call) attractive. *Id.* That same day, after completing the CVSA test, Smith took and passed the required CHP written psychological exam. *Id.* at 3. During the exam, Smith alleges that Call came into the room and tried to make casual conversation with her, which made her feel uncomfortable. *Id*.

Smith confided in Officer Casey, a family friend and CHP officer, about Call's behavior. *Id.* Casey reported the behavior to his superior officer, Captain Paul Davis, who in turn notified Captain Morrison, Call's commander. *Id.* Captain Morrison assigned Sergeant Annie Garcia, one of the two sergeants in charge of the Investigative Services Unit, to investigate the matter. *Id.*

On June 14, 2011, Garcia called Smith and the two met in person the following day. *Id.* at 5. Garcia provided Smith with a citizen's complaint form, but did not refer Smith to the CHP's Equal Employment Opportunity ("EEO") process. *Id.* The CHP states that Smith told Garcia during this meeting that she did not want to file a complaint against Call, which Smith disputes. *Id.* at 6. Smith contends that the citizen's complaint form is used for situations involving the conduct of CHP officers and employees with the public, and that sexual harassment claims by an applicant for employment should be referred to a CHP EEO investigator. *Id.* at 19-20.

Smith filled out and returned the CHP citizen's complaint form. *Id.* at 7. On July 7, 2011, following an internal investigation regarding Smith's allegations, the CHP took several corrective

2

1  steps that included disciplining Call in a Memorandum of Direction, changing CVSA exam
2  procedures, implementing protocols to track CVSA audio recordings and requiring mandatory
3  training on CVSA exams for background investigators. Dkt. No. 36 at 7. On August 30, 2011,
4  Garcia called Smith to advise her that the investigation was complete, Smith's allegations were
5  sustained and that corrective action had been taken. *Id.* at 7-8. During this call, Smith "agreed to
6  not have the complaint filed." Dkt. No. 45 at 7. Garcia told Smith to contact her if she changed
7  her mind. Dkt. No. 36 at 8. Smith contends that she did, in fact, change her mind and called
8  Garcia back to request that the citizen's complaint be filed. Dkt. No. 45 at 7. The CHP disputes
9  that Smith made this call. Dkt. No. 36 at 8.

10  On September 12, 2011, Smith received a letter from Captain Morrison, which stated that
11  she had been recommended for hire as a cadet. Dkt. No. 46, Ex. 2. The letter also stated that
12  Smith had "related [that she] did not want to file a complaint." *Id.* Smith alleges that the letter
13  mischaracterized her wishes, so she contacted Garcia again to say she wanted to continue with the
14  complaint process. Dkt. No. 45 at 9. The CHP disputes that Smith made this phone call to Garcia.
15  Dkt. No. 36 at 8.

16  Garcia states that she left a voicemail for Smith on September 1, 2011, saying that Smith's
17  federal I-9 form for verifying citizenship or immigration status for employment was missing and
18  that the CHP would send it to Smith to sign and return. Dkt. No. 39, Ex. C. Garcia also alleges
19  that she called and left a message for Smith on September 22, 2011 stating that the I-9 form had
20  still not been received. *Id.* Smith contends that she did not receive either voicemail. Dkt. No. 45
21  at 9-10.

22  After arriving home from vacation, Smith found a letter dated October 6, 2011, from
23  Captain Morrison. Dkt. No. 39, Ex. A. The letter stated that the Applicant Investigation Unit had
24  recently sent Smith an I-9 form and that Smith needed to return the form to the CHP's Northern
25  Division. Dkt. No. 46, Ex. 3. The letter mentioned Garcia's calls about the I-9 form and advised
26  Smith that "[i]f you wish to remain active in the background process for the position of Cadet,
27  CHP, you must contact Northern Division within ten calendar days of the date on this letter, to
28  express your interest in continuing the process. Failure to respond within the ten day time period

3

1    will result in removal of your name from the certification list." *Id.*  Defendant contends that the
2    letter is "a standard letter commonly used when documentation is needed from an applicant." Dkt.
3    No. 38 at 2.  Smith called her Background Investigator and requested he send her the form, which
4    Smith completed and returned to the CHP.  Dkt. No. 45 at 10.  Her application package was
5    forwarded to Cadet Hiring in Sacramento as a recommend-for-hire.  Dkt. No. 36 at 9.

6    In January 2012, Smith contacted Captain Davis for advice because she had not received
7    any further information about the citizen's complaint.  Dkt. No. 45 at 10.  Davis told Smith that
8    Officer Morrison had said Smith did not want to file a complaint.  *Id*.  Davis provided Smith with
9    contact information for three CHP Equal Employment Opportunity officers.  *Id.* at 11.  She
10   contacted and met with one of the officers, Sergeant Daniel Fansler.  *Id.*  Fansler offered Smith the
11   remedy of re-opening her previous citizen's complaint.  *Id.*  Smith declined, explained that she
12   was dissatisfied with the outcome of her last attempt to file a citizen's complaint, and instead told
13   Fansler she wished to file a Formal Discrimination Complaint.  *Id.*

14   At a later meeting, and for the first time since the alleged harassment, Fansler provided
15   Smith a CHP brochure entitled "Discrimination Complaint Process."  *Id.*  The brochure contained
16   information regarding remedies and time deadlines for employees and applicants who have
17   encountered discrimination.  *Id.*  Fansler also gave Smith an EEO Formal Discrimination
18   Complaint form, which she filled out and returned.  *Id.* at 12.  As a result, two trained CHP EEO
19   investigators, Lieutenant Greg Baarts and Captain Greg Peck, investigated Smith's complaint.  *Id.*

20   On March 1, 2012, Baarts and Peck interviewed Smith at her home.  *Id*.  Smith alleges that
21   she was "uncomfortable with the obvious disdain that Capt. Peck displayed towards her" during
22   the interview.  *Id*.  She contends that Peck's questions placed the onus on her to explain why
23   Call's behavior was inappropriate and that he said, "if you are an appropriate candidate, you will
24   be accepted" and "at this point there is no guarantee that you will reach the Academy."  *Id*.  Smith
25   alleges that after the tape recorder was turned off, Peck threatened her by saying that she must
26   keep information relating to the complaint confidential in order to protect Call's privacy and to
27   prevent a suit for slander.  *Id.*
28

The following month, on April 24, 2012, Smith was informed that she needed to retake the written psychological exam she had passed on December 16, 2010, because the results had expired. Dkt. No. 36 at 11. Defendant contends that in order to conduct a full psychological evaluation, the subject must have a recent written exam, and that many other candidates were asked to re-take the written exam because their results had also expired. Dkt. No. 38 ¶¶ 4-5; Dkt. No. 41 ¶¶ 6-8. On June 6, 2012, Assistant Chief E.K. Knudsen sent Smith a letter explaining that she could retake the test at an expedited test time or at alternate locations, if she preferred. Dkt. No. 36 at 11.

Baarts and Peck interviewed Smith and conducted other investigative tasks. *Id.* In April 2012, they briefed Acting Chief Todd Chadd on their findings. *Id.* Chadd sent Smith a Letter of Determination regarding the outcome of the EEO investigation on June 5, 2012. *Id.* The letter advised her that an investigation found "inappropriate conduct pertaining to other departmental policy," but that "there was insufficient evidence to establish that Officer Call's conduct violated departmental discrimination policy." Dkt. No. 39, Ex. B7. According to Smith, the letter did not assure her that Call's behavior had been addressed and remedied. Dkt. No. 45 at 13.

On June 11, 2012, Smith filed a complaint with the Equal Employment Opportunity Commission alleging retaliation for opposing discrimination and engaging in the agency's EEO complaint process. Dkt. No. 36 at 12. She filed a similar complaint of discrimination with the California Department of Fair Employment and Housing. Dkt. No. 1 at 3. The federal and state agencies eventually issued the administrative determinations allowing Smith to sue in this Court. *Id*.

**DISCUSSION**

**I. SUMMARY JUDGMENT**

As amended in 2010, Rule 56 of the Federal Rules of Civil Procedure provides that a "party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought. The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The current version of

1  Rule 56 is a significant clarification of the summary judgment process.  Now, the Court is

2  expressly authorized to grant what is sometimes called partial summary judgment to dispose of

3  less than the entire case and even just portions of a claim or defense.  *See* Fed. R. Civ. P. advisory

4  committee notes, 2010 amendments.  It can prune the plaintiff's or defendant's tree without

5  cutting it all the way down.  The current version of Rule 56 also emphasizes that the Court "shall"

6  issue summary judgment when warranted by the facts and the law.  *Id.*

7      The standards for summary judgment remain the same.  A dispute is genuine "if the

8  evidence is such that a reasonable jury could return a verdict" for either party.  *Anderson v. Liberty*

9  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it could affect the outcome of the suit

10  under the governing law.  *Id*. at 248-49.  To determine whether a genuine dispute as to any

11  material fact exists, a court must view the evidence in the light most favorable to the non-moving

12  party.  *Id*. at 255.  A principal purpose of summary judgment "is to isolate and dispose of factually

13  unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  On summary

14  judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to

15  be drawn in his favor."  *Anderson*, 477 U.S. at 255.

16      In determining whether to grant or deny summary judgment, it is not the Court's task "to

17  scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279

18  (9th Cir. 1996) (quotations omitted).  Rather, it is entitled to rely on the nonmoving party to

19  "identify with reasonable particularity the evidence that precludes summary judgment." *Id*.

20  **II.  TITLE VII & FEHA**

21      To state a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) she

22  engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a

23  causal link between the protected activity and the adverse employment action.  *Villiarimo v. Aloha*

24  *Island Air, Inc*., 281 F.3d 1054, 1064 (9th Cir. 2002).  Specifically, a plaintiff must show that a

25  reasonable employee would have found the challenged action "materially adverse, which in this

26  context means it well might have dissuaded a reasonable worker from making or supporting a

27  charge of discrimination."  *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)

28

1  (quotations omitted). Title VII applies to job applicants like Smith, and not just to employees. *Id*.
2  at 56.
3        "Summary judgment is not appropriate if a reasonable jury viewing the summary judgment
4  record could find by a preponderance of the evidence that the plaintiff is entitled to a verdict in his
5  favor." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). A plaintiff alleging
6  employment discrimination "need produce very little evidence in order to overcome an employer's
7  motion for summary judgment. This is because the ultimate question is one that can only be
8  resolved through a searching inquiry -- one that is most appropriately conducted by a factfinder,
9  upon a full record." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000)
10 (quotations omitted). "In evaluating motions for summary judgment in the context of employment
11 discrimination, we have emphasized the importance of zealously guarding an employee's right to a
12 full trial, since discrimination claims are frequently difficult to prove without a full airing of the
13 evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv.*
14 *Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).
15       The FEHA's antiretaliation provision makes it unlawful for an "employer . . . to discharge,
16 expel, or otherwise discriminate against any person because the person has opposed any practices
17 forbidden under this [Act] or because the person has filed a complaint, testified, or assisted in any
18 proceeding under this [Act]." Cal. Gov't. Code § 12940(h). Because FEHA is interpreted
19 consistently with Title VII, our Circuit analyzes the federal and state claims together under Title
20 VII case law. *Ambat v. City and Cnty. of San Francisco*, 757 F.3d 1017, 1023 n.2 (9th Cir. 2014).

21 **III.   THE RETALIATION CLAIMS**

22       Although the statutory framework for Smith's claims is straightforward, her factual
23 allegations are all over the map. Smith appears to allege that just about every interaction she had
24 with the CHP after the CVSA test was an incident of retaliation. Some of these allegations are
25 trivial and fail to rise to actionable levels under Title VII. For example, Smith refers to allegedly
26 rude, unfriendly or brusque behavior by CHP representatives. As the Supreme Court has made
27 clear, concerns about workplace style and grace are not the grist of Title VII claims. "Title VII, as
28 we have said, does not set forth 'a general civility code for the American workplace.'"

1   *Burlington*, 548 U.S. at 68 (citation omitted).  Smith will not be allowed to present a retaliation

2   claim at trial based on allegations of incivility or a "simple lack of good manners" by the CHP.  *Id*.

3   That claim against the CHP is dismissed.

4   She will also not be allowed to present a claim of ineffective investigation as a form of

5   retaliation.  Smith appears to allege that the CHP was inept from the start in following up on her

6   harassment complaint.  But failure to conduct an adequate investigation does not constitute

7   retaliation.  Our district has definitively held that an inadequate investigation after an alleged act

8   of discrimination or harassment "cannot be considered an action that 'materially affects the terms,

9   conditions, or privileges of employment' under FEHA, and cannot be considered an action that

10  reasonably would deter an employee from engaging in the protected activity under Title VII."

11  *Cozzi v. Cnty. of Marin*, 787 F. Supp. 2d 1047, 1069 (N.D. Cal. 2011).  A retaliation claim based

12  on a poor investigation will not be permitted at trial.  That claim against the CHP is also

13  dismissed.

14  Smith's remaining claims are a mosaic of incidents that the Court had to laboriously piece

15  together from the papers.  As an initial matter, the parties do not dispute that Smith engaged in

16  protected activity in satisfaction of the first element for retaliation under Title VII.  *See* Dkt. No.

17  36.  But the CHP contends that the incidents discussed here do not add up to conduct that a

18  reasonable job applicant would have found materially adverse in that they would have deterred a

19  reasonable applicant from making or supporting a charge of discrimination or harassment.

20  *Burlington*, 548 U.S. at 68.  The Court rules as follows on these incidents.

21  **A.  Deterring a Discrimination Complaint**

22  The Court finds that there is a genuine dispute about whether the CHP tried to impede or

23  dissuade Smith from pursuing a discrimination complaint.  Smith points to several incidents that

24  could permit -- but by no means require or compel -- a reasonable jury to find that the CHP's

25  conduct might have deterred a reasonable applicant from pursuing a complaint.  This conduct

26  includes the fact that the CHP gave Smith a citizen's complaint form rather than an EEO form for

27  reporting discrimination when she first raised the CVSA incident.  The parties spent a lot of

28  energy debating whether Smith wanted to file an EEO complaint, but that debate is largely

irrelevant to summary judgment and the Court need not wade into it here. The important facts are that Smith raised concerns about the CVSA incident in early 2011 but did not receive the appropriate EEO forms and procedures for her complaint until January 2012, after Smith called her friend, Captain Davis. Davis gave Smith contact information for several EEO counselors, including Sergeant Daniel Fansler, who Smith called. Fansler determined that Smith's allegations fell within the subject matter and time frame for filing an EEO complaint, but again only offered her the remedy of re-opening the same citizen's complaint she had filed in June 2011. Dkt. No. 46, Ex. 21. Several CHP employees, including Fansler, Officer Morrison and Lt. Greg Baarts, have testified that they were not aware of any other CHP applicant ever being referred to the citizen's complaint process. Dkt. No. 45 at 6. And Captain Davis explained that a "Citizen's Complaint is a procedure for a member of the public to complain about the actions of a CHP officer such as an unwarranted traffic ticket or stop; it is not intended for an applicant for employment with the CHP to complain about sexual harassment during the application process. I could not imagine why anyone at the Northern Division would suggest that Ms. Smith file a citizen's complaint other than to perhaps prevent her from filing an EEO complaint." Dkt. No. 48 ¶ 14. Plaintiff has raised a triable issue of fact as to whether offering only the citizen's complaint process would reasonably dissuade an employee from making and supporting her sexual harassment claims through the CHP's EEO process. *See Burlington*, 548 U.S. at 68 ("[t]he anti-retaliation provision . . . [prohibit]s employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers."). The fact that the CHP appears to have deviated from its usual use of the citizen's complaint form bolsters Smith's contentions. *Diaz v. Eagle Products, Ltd.*, 521 F.3d 1201, 1214 (9th Cir. 2008) (employer's deviation from established policy can be evidence of pretext in Title VII cases).

The triable disputed evidence also includes communications by the CHP insisting that Smith did not want to file a complaint when she alleges that she in fact did want to. For example, after Smith's initial interview with Garcia, she states that she called Garcia back to ask that the citizen's complaint be filed. But the following month, in September 2011, Smith received a letter from Officer Morrison stating that Smith that did not want to pursue the citizen's complaint. The

9

1    Court finds that there is a genuine dispute warranting trial about the nature and effect of these

2    communications.  Receiving a letter stating Smith "did not want to file a complaint" and that "this

3    incident . . . will not affect your selection for California Highway Patrol," after a phone call in

4    which Smith said that she did want to file the complaint is evidence a jury could rely on to find

5    that a reasonable applicant would be deterred from filing a complaint.  Dkt. No. 46, Ex. 2.

6         Consequently, Smith will be permitted to go to trial on whether the CHP's failure to

7    provide the EEO form and procedures promptly and CHP communications stating she did not

8    want to pursue a claim constitute retaliatory conduct.  Summary judgment is denied on those

9    claims.

### B. The I-9 Letter

11   A much closer call is whether Smith can go to trial on the I-9 Letter.  After returning home

12   from vacation, Smith opened a letter dated October 6, 2011, from Officer Morrison, which stated:

> The Northern Division Applicant Investigation Unit recently sent
> you an I-9 form to sign and return.  In order for you to remain in the
> background process, it is imperative that you return the I-9 form . . .
> Sgt. Annie Garcia has made several follow up calls to ensure that
> you received the form but has been unsuccessful in contacting you.
> If you wish to remain active in the background process for the
> position of Cadet, CHP, you must contact Northern Division within
> ten calendar days of the date on this letter, to express your interest in
> continuing in the process.  Failure to respond within the ten day time
> period will result in removal of your name from the certification list.

Dkt. No. 46, Ex. 3.  The parties devote considerable energy to Smith's claim that she never received Garcia's calls or the I-9 form itself, but that again is not a relevant inquiry for summary judgment.  The salient question is whether the CHP's insistence that Smith complete and return the I-9 form while she was a job applicant and not an employee amounts to an adverse employment action.  Sergeant Carter's declaration states that "[p]er CHP policy and practice, one of the documents an applicant must complete is the I-9 Form."  Dkt. No. 38 ¶ 6.  But the actual I-9 form itself specifically states that Section 1 -- the section to be completed by the employee -- should not be completed before the employee has accepted a job offer.  Dkt. No. 46, Ex. 20.  The form also refers to "employee," never "applicant" or "prospective employee."  *Id.*  Smith signed next to "Employee's Signature," even though she had not been hired.  *Id.*

10

Neither party submitted case law on whether conduct like this could be retaliatory. The Court has some misgivings about whether it could constitute a materially adverse employment action. But because there is a genuine dispute about the nature and purpose of asking Smith to fill in the I-9 on a tight deadline when she was not a CHP employee, and facts about the I-9 at trial could show evidence of retaliation, summary judgment is denied with respect to this claim.

**C. Psychological Exam Re-Test**

On April 24, 2012, Officer Barnwell left Smith a message explaining that Smith needed to retake the written psychological exam she completed and passed in December 2010. Smith argues that requiring her to retake the exam was retaliatory.

This claim will not go forward. The regulation governing the timing requirements for a CHP candidate's psychological evaluation states that "[t]he psychological evaluation must be completed within one year prior to date of employment." Cal. Admin. Code tit. 11, § 1955(b). CHP offers declarations from Cadet Hiring Sergeant Brent Carter and California Department of Human Resources Chief Psychiatrist Jo Danti explaining that the CHP interprets this regulation as requiring an applicant to pass the written psychological exam, which is one component of the psychological evaluation, within one year of the oral exam. Dkt. No. 38 ¶¶ 4-5, 8; Dkt. No. 41 ¶¶ 4-8. The declarations also explain that Smith was one of many applicants who had to retake the exam because California's budgetary issues prevented the CHP from offering an academy, causing many applicants' tests to expire before they entered a cadet class. *Id.* Lieutenant Baarts explained the reason for needing to retake the exam to Smith. Dkt. No. 39, Ex. E. And when Smith told Baarts that she did not want to take the exam at the Northern Division, where the alleged harassment had occurred, Baarts offered her alternate test sites. *Id.* Chief Knudsen also explained that the test results had expired, even citing to the governing regulation and explaining the CHP's interpretation of that regulation. *Id.* Knudsen also offered to expedite the exam and to facilitate the exam at an alternate testing location. Dkt. No. 39, Ex B12.

Smith offers no evidence that the requirement to re-take the written exam was retaliatory. Moreover, given CHP's efforts to accommodate Smith in re-taking the exam and the repeated

11

1  explanations for why she needed to re-take it, no reasonable applicant would find this requirement
2  to be retaliatory.  Summary judgment is granted for this claim.

### D. The Slander Admonition

According to Smith, during the March 1, 2012, EEO interview, Captain Peck's "threat that plaintiff could be sued for slander by Call if she discussed this matter likely constitutes an additional adverse action."  Dkt. No. 45 at 21.  Smith provides no argument or evidence for why this admonishment is retaliatory.

Pursuant to CHP policy and training, Peck gave Smith a standard warning that he gives to all complainants.  Dkt. No. 37 ¶ 4.  He advised Smith that, given the sensitivity of the situation, discussing the confidential investigation with others could expose her to a defamation suit if her statements turned out to be false.  Dkt. No. 37 ¶ 4, Ex. B; *See* Dkt. No. 37, Ex. A (CHP EEO Policy's Practical Tips for EEO Investigators, which states: "Admonish employees whom you interview as part of an investigation not to discuss the investigation and warn them of dangers of discussing the investigation with others," which can "expose the employee to a defamation suit if their statements turned out to be false.").  This standard admonition given by the CHP in EEO investigations would not deter a reasonable applicant from making or supporting a charge of discrimination.  *See Cochise v. Salazar*, 601 F. Supp. 2d 196, 201 (D.D.C. 2009), aff'd, 377 F. App'x 29 (D.C. Cir. 2010) (defendant's caution against dishonesty during an administrative investigation was not a materially adverse employment action).  Summary judgment is granted.

### IV. CALIFORNIA CIVIL CODE § 47(B) AND THE FEHA CLAIM

The CHP has raised a statutory privilege as to Smith's California state law FEHA claim only, and not the Title VII claim.  The gist of the CHP's argument is that California Civil Code § 47(b) bars certain communications made by the CHP from giving rise to liability here.  Section 47(b) privileges a publication or broadcast "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law."  Cal. Civ. Code § 47(b).

The section 47(b) privilege is typically applied in contexts involving torts, particularly in claims for libel and defamation, and not in the FEHA context.  *See Competitive Techs. v. Fujitsu*

*Ltd.*, 286 F. Supp. 2d 1118, 1153 (N.D. Cal. 2003). The CHP has provided scant case law holding that a FEHA retaliation claim can be barred under section 47(b) and fails to identify with specificity which communications it seeks to treat as privileged. Consequently, the Court declines to make a blanket finding that section 47(b) bars plaintiff's FEHA claims, but that decision is without prejudice. The CHP can renew the argument in pretrial documents and motions in limine, so long as it supports the argument with clear case law and specific identifications of the communications for which it invokes section 47(b).

## CONCLUSION

Summary judgment is granted for the CHP on claims for retaliation based on: (1) rude or uncivil behavior; (2) inadequate investigation of Smith's complaint; (3) the exam retest; and (4) the slander admonition. Summary judgment is denied for retaliation based on: (1) the use of the citizen's complaint form and the CHP communications stating Smith did not want to pursue a complaint; and (2) the I-9 letter. The pre-trial conference is set for March 11, 2014, at 3:00 p.m. Trial is set for March 23, 2014, at 9:00 a.m. The parties are advised to read and adhere to the Court's standing orders on trials and pretrial conferences in civil cases.

**IT IS SO ORDERED**.

Dated: December 10, 2014

_____
JAMES DONATO
United States District Judge

13